## Case No. 85.

### The ADMIRAL.

[3 Wall. Jr. 361;[1] 5 Phila. 116; 19 Leg. Int. 300.]

Circuit Court, E. D. Pennsylvania. April Sess., 1862.

PRIZE—BLOCKADE—FALSE CLEARANCE.

1. Where a vessel sailed from Liverpool, England, for the port of Savannah, then blockaded by the United States, as a rebel port, with orders to seek the blockading squadron (if the blockade was found to exist), and procure an indorsement on her register that she had been warned off, and then to proceed to St. John's, New Brunswick, but with a clearance on board expressing St. John's as the sole port of destination, it was held (the vessel having been captured off Savannah,) that she was confiscable for a violation of the blockade of that port.

[See note at end of case.]

2. Semble, that the president's proclamation of the 19th of April, 1861, announcing that he had set on foot a blockade of the ports within the state of Georgia and other states, does not entitle a vessel, which has full knowledge of the establishment of the blockade before she enters upon her voyage, to a warning by one of the blockading vessels, or an endorsement of a warning upon her register, when taken in the act of entering one of the blockading ports.

[1][Reported by John William Wallace, Esq., and here reprinted by permission.]

In admiralty. This was a libel in prize, filed by the United States against the ship "Admiral," her tackle, apparel and furniture, and the goods, wares and merchandise laden thereon; and came here on appeal of her claimants, British subjects, from the district court condemning her.

The facts appearing from the evidence in preparatorio, and the ship's papers, were as follows: 1. That the said vessel was of English ownership, and the property of the claimants. 2. That she cleared from Liverpool in September, 1861, with a cargo of salt and coal; the whole being of British growth, and loaded and owned by British subjects. 3. That the clearance at Liverpool expresses St. John's, New Brunswick, as the sole destination of the vessel. 4. That the real destination of the vessel at the time of her clearance, was to Savannah, Georgia. This fact appeared from a letter of instructions from the owners of the ship to the master, dated Liverpool, 12th September, 1861, in which they say as follows: "We hope you will have good start of channel, and thus make a good passage out. The enclosed charter with Messrs. W. & R. Wright, will show you the nature of the voyage. These gentlemen, like many others, hold the opinion that this unfortunate contest cannot last long, it being so obviously the interest of both parties to bring it to a close. This being so, and they being very wishful to have cargo of pitch pine from Savannah to St. John's, so soon as the port is opened again, for their new ship, 'St. John's River,' is our great reason for their making it a condition in taking the ship, that she should go off Savannah, so that if possible they might have the very first shipment of timber. Of course, in calling off, you will endeavor to meet the blockading ship (if the blockade is found to exist still,) and then get the officer in command to endorse on your register that the ship has been warned off. This will be all that is necessary for us as owners of the ship, to justify your departure for St. John's, and there consigning the ship to Messrs. W. & R. Wright, to whom, in the meantime, we will write respecting you. You will distinctly understand, therefore, that you run no risk whatever with the ship, but rather endeavor to satisfy yourself as to blockade, and then find out the man-of-war, report yourself and get the register endorsed. You will no doubt speak some vessels when approaching the American coast, so as to ascertain exactly the state of matters, and be guided thereby in such way as not to infringe the blockade regulation. Hoping in good time to hear from you."

It also appeared from the answer of the master to one of the interrogatories in preparatorio. He says: "The captured vessel sailed on her present voyage from Liverpool, England. She cleared for St. John's, with orders to go to Savannah, seek the blockad-

ing squadron, if any there was, uncertain whether the blockade still existed, and if so, then proceed to St. John's."

7. The following is an extract from the claim filed by the master: "When I was about thirty miles off Tybee Island, under the British flag, and standing towards the land off the port of Savannah, and without any knowledge whether a blockade existed, or whether it had been raised, and while I was looking for a blockading vessel, or some other vessel, of which I might inquire whether a blockade existed, I was hailed and boarded by an officer from the United States Steamer 'Alabama.' "

8. The log showed that at the time of the capture the vessel was preparing to enter the port of Savannah.

Ashton, for the United States.

GRIER, Circuit Justice. I agree with Chief Justice Tindal, in Medeiros v. Hill, 8 Bing. 231, "that the mere act of sailing to a port which is blockaded at the time the voyage is commenced, is not an offence against the law of nations, where there is no premeditated intention of breaking the blockade." Consequently, if, in the present case, the Admiral had taken out a clearance for Savannah, with the expectation that the blockade might be removed before her arrival, with instructions to make inquiry as to its continuance, at New York or Halifax, or other neutral port; and after having made such inquiry, had made no further endeavor to approach or enter the blockaded port, her seizure and condemnation as prize, could not have been justified. But she presents a very different case. She was off Tybee Island, sailing for the blockaded port. She had made no inquiry on the way; had no reason to believe the blockade to be raised; and when arrested in her attempt to enter, she exhibits a clearance for St. John's, New Brunswick, a port she may be said to have passed, and a letter of instructions from the owners, to call off the harbor of Savannah, to "endeavor to meet the blockading ship, and get the officer in command to endorse the register," etc., but to make no attempt to run the blockade. The clearance is the proper document to exhibit and disclose the intention of a ship. The clearance in this case may not properly come within the category of "simulated papers." But it does not disclose the whole truth. The suppression of a most important part, makes the whole false. It may be true, that in times of general peace, a clearance exhibiting the ultimate destination of a vessel, without disclosing an alternative one, may have sometimes been used by merchants to subserve some private purpose. But in times of war, when such omissions may be used to blindfold belligerents, as to the true nature of a ship's intended voyage, and to elude a blockade, the concealment of the truth must be considered as prima facie evidence of a fraudulent intention.

The Admiral, with a full knowledge that her destined port is blockaded, takes a clearance for St. John's, and is found a thousand miles from the proper course to such port, and in the act of entering the blockaded port. And when thus arrested, for the first time inquires whether the blockade has been raised. A vessel which has full knowledge of the existence of a blockade, before she enters on her voyage, has no right to claim a warning or endorsement, when taken in the act of attempting to enter. It would be an absurd construction of the president's proclamation, to require a notice to be given to those who already had knowledge. A notification is for those only who have sailed without a knowledge of the blockade, and get their first information of it, from the blockading vessels. Now the primary destination of this vessel is to a blockading port. If the owners had reason to expect that possibly the blockade might be raised before the arrival of their vessel, and thus a profit be made, by their ability to take the first advantage of it, their clearance, in the exercise of good faith, should have made admission of the true primary destination of the vessel. If the truth had appeared on the face of this document, and if the master had been instructed to inquire at some intermediate port, and to proceed no farther, in case he found the blockade still to exist, the owners might justly claim, that their conduct showed "no premeditated intention of breaking the blockade." But when arrested in the attempt to enter a port known to be blockaded, with a false clearance, it is too late to produce the bill of lading or letter of instructions to prove innocency of intention. In such cases intentions can be judged only by acts. The true construction of this proceeding may be thus translated: "Enter the blockaded port if you can, without danger; if you are arrested by a blockading vessel, inform the captor that you were not instructed to run the blockade, but had merely called for information, and would be pleased to have your register endorsed, with leave to proceed elsewhere." If so transparent a contrivance could be received as evidence of a want of any "premeditated intention to break the blockade," the important right of blockade would be but a brutum fulmen, in the hands of a belligerent. "It would" (says Lord Stowell), "amount in practice to a universal license to attempt to enter, and being prevented, to claim the liberty of going elsewhere." In the cases where the stringency of the general rule established by this judge (but overruled in Medeiros v. Hill) had been by him relaxed as to American vessels in certain circumstances, the clearances were taken contingently, but directly for the blockaded port, in the expectation of a relaxation of the blockade,

with instruction to inquire as to the fact at a British or neutral port. The clearance exhibits the whole truth, and the place of inquiry their good faith. In these most material facts this case differs from them. Decree affirmed.

[NOTE. On appeal to the supreme court, this decree was affirmed. It there appeared that, if the blockade be not raised, the vessel was to proceed to St. Johns, N. B., and deliver her cargo. The stipulated freight was 30 shillings per ton if the cargo should be landed at Savannah, and 15 shillings per ton if landed at St. Johns. The court, by Mr. Justice Clifford, held that the proofs warranted the conclusion that the vessel sailed for a blockaded port with the intention of violating the blockade regulations, and that previous warning is not necessary in such a case, nor is it necessary that any warning should have been peviously indorsed on her register. Mere sailing for a blockaded port is not an offense; but where the vessel has a knowledge of the blockade, and sails for the blockaded port with the intention of violating the regulations, she is clearly liable to capture. The Admiral, 3 Wall. (70 U. S.) 603.]